# Illinois Official Reports

## Appellate Court

---

*North Community Bank v. 17011 South Park Ave., LLC*,
2015 IL App (1st) 133672

---

| | |
|---|---|
| Appellate Court Caption | NORTH COMMUNITY BANK, as Successor to Plaza Bank, Plaintiff-Appellee, v. 17011 SOUTH PARK AVE., LLC; STAVROULA TSEVIS; SOUTH PARK CITGO, INC.; CHICAGO TITLE AND LAND TRUST, as Successor to Gladstone Norwood Trust and Savings Bank, as Trustee Under Trust Agreement Dated January 23, 1987 and Known as Trust Number 1127; UNKNOWN OWNERS and NONRECORD CLAIMANTS, Defendants (Nick Tsevis, Defendant-Appellant). |
| District & No. | First District, First Division<br>Docket No. 1-13-3672 |
| Filed | March 16, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CH-19801; the Hon. Daniel Patrick Brennan, Judge, presiding. |
| Judgment | Affirmed in part and dismissed in part. Cause remanded. |
| Counsel on Appeal | Edwin J. Belz, of Chicago, for appellant.<br><br>Chuhak & Tecson, P.C., of Chicago (Daniel J. Fumagalli and Francisco E. Connell, of counsel), for appellee. |

| Panel | PRESIDING JUSTICE DELORT delivered the judgment of the court with opinion. |
|---|---|
| | Justices Cunningham and Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1     This case presents two novel issues regarding mortgage foreclosures. The first concerns what facts must a mortgagor prove to establish he validly reinstated a delinquent mortgage. The second involves what procedural pitfalls lie in the path of an aggressively defensive mortgagor who tries to interlocutorily appeal a foreclosure order.

¶ 2                                    BACKGROUND

¶ 3     A defendant in this case, 17011 South Park Ave., LLC (17011), borrowed money from plaintiff Plaza Bank to fund construction of a gasoline station in South Holland, Illinois. The loans were memorialized by two notes, both signed by 17011. The notes were executed in 2005 and in 2009 and modified thereafter. They were secured, in part, by mortgages on a different property owned by 17011 located on Peterson Avenue in Chicago. Both mortgages, executed contemporaneously with the notes, were signed by the land trustee which held record title to the property. Defendant South Park Citgo, Inc. (Citgo), and defendant-appellant Nick Tsevis (Tsevis) were the guarantors of the loans. After the loans fell into default, Plaza Bank[1] filed this multicount foreclosure and collection case against 17011, Citgo, Tsevis, Tsevis's wife, and the land trustee.

¶ 4     Tsevis filed a counterclaim against Plaza Bank which he later amended. The amended counterclaim contained several counts. The only count relevant to this appeal, count II, alleged that Plaza Bank had a fiduciary duty to Tsevis and had breached that duty. On April 1, 2013, the trial court dismissed that count with prejudice pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)), apparently following well-established Illinois law holding that lenders do not generally owe fiduciary duties to borrowers. See *Teachers Insurance & Annuity Ass'n of America v. La Salle National Bank*, 295 Ill. App. 3d 61 (1998). The counterclaim dismissal order contained no language indicating that it was final or appealable.

¶ 5     On July 17, 2013, the trial court granted summary judgment in favor of Plaza Bank and against the various defendants on the main foreclosure and loan claims. Contrary to usual practice, no additional order was entered that day actually foreclosing on the mortgage and authorizing the sale of the property. Before the court could enter such an order, the defendants moved to "vacate" the summary judgment order. The defendants also moved to make the order dismissing their amended counterclaim final and appealable under Illinois Supreme Court Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010)).

---

[1]In the court below, North Community Bank was substituted for Plaza Bank by virtue of a merger. The proceedings below relevant to this appeal all relate to the time during which plaintiff operated under the name of Plaza Bank; for sake of simplicity we will refer to plaintiff as Plaza Bank.

¶ 6        On October 23, 2013, the trial court entered three separate and distinct written orders. The court: (1) denied the defendants' motion to vacate the summary judgment order; (2) struck the defendant's motion to make the counterclaim dismissal final and appealable; and (3) entered a formal order of foreclosure and sale.

¶ 7        Although an order of foreclosure is final as to the matters it adjudicates, the order determines fewer than all the rights and liabilities in issue because the trial court still must enter orders approving the foreclosure sale and directing the distribution of the sale proceeds. Accordingly, in a foreclosure case, the order confirming the sale, rather than the judgment of foreclosure, is the final and appealable order. *EMC Mortgage Corp. v. Kemp*, 2012 IL 113419, ¶ 11. Here, however, the third October 23 order–the order of foreclosure and sale–actually contained additional language indicating that it was final and appealable under Rule 304(a). Including interlocutory appeal language in foreclosure orders is relatively uncommon, but nonetheless allowable. See *In re Marriage of Verdung*, 126 Ill. 2d 542, 555 (1989) (order of foreclosure and sale not appealable unless it includes Rule 304(a) language). The other two orders contained no similar language.

¶ 8        On November 20, 2013, Tsevis filed a notice of appeal stating that he was requesting the following relief from this court:

> "Reverse and remand the decision of the Trial Court Order of October 23, 2013 denying motion to reconsider vacate [*sic*] the order of July 17, 2013 and all other Orders dismissing pleadings prior to July 17, 2013. (*Santana v. Zipperstein*, 142 Ill. App. 3d [3]86)."

Tsevis's appeal was interlocutory; Plaza Bank's case was still pending before the trial court at that point because the property had not yet been sold. Because of the specific Rule 304(a) language included in the order of foreclosure and sale, his interlocutory appeal was effective at least as to that particular order. We discuss the appealability of the other orders later in this opinion.

¶ 9        The appellate record before us stops at that point. However, the circuit court clerk's on-line docket indicates that further proceedings were conducted and that the case was eventually terminated on March 24, 2014, by entry of an order approving the sale of the subject property.

¶ 10        On January 9, 2014, Tsevis filed a docketing statement in support of his interlocutory appeal in this court. On March 19, 2014, Plaza Bank moved to dismiss this appeal, arguing that Tsevis had appealed prematurely because the orders at issue were neither final nor appealable. Tsevis did not respond to that motion, but this court entered an order denying it, noting merely that the foreclosure and sale order was in fact appealable because it included sufficient Rule 304(a) language. The order denying dismissal of Tsevis's appeal did not mention the other two orders, and the parties have briefed the case as if all the orders were appealable.

¶ 11        On appeal, Tsevis (who is the only appellant) contends that the trial court erred by: (1) granting summary judgment in favor of Plaza Bank on the main foreclosure and collection counts; and (2) dismissing his fiduciary duty claim. He raises no issues regarding any other counts in his amended counterclaim. We affirm the foreclosure order, but dismiss the appeal regarding the counterclaim for lack of jurisdiction.

¶ 13   Before we address the merits of this case, we must resolve Plaza Bank's second request that we dismiss the appeal. Plaza Bank contends that Tsevis's brief did not comply with applicable rules. We agree with Plaza Bank that the brief contains no statement of facts; an incorrect jurisdictional statement; no statement of our standard of review; and, most importantly, no index whatsoever to the 7-volume, 1,664-page record on appeal. Our rules require that appellants' briefs contain all of these materials. See Ill. S. Ct. R. 341(h)(9) (eff. Feb. 6, 2013); R. 342(a) (eff. Jan. 1, 2005).

¶ 14   Supreme court rules are not mere suggestions; they are rules that must be followed. *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 57. "Where an appellant's brief fails to comply with supreme court rules, this court has the inherent authority to dismiss the appeal." *Epstein v. Galuska*, 362 Ill. App. 3d 36, 42 (2005). In addition, this court may strike an appellant's brief for noncompliance with Rule 341. See *People v. Thomas*, 364 Ill. App. 3d 91, 97 (2006). We note, however, that striking a brief or dismissing an appeal for failure to comply with supreme court rules is a harsh sanction. *In re Detention of Powell*, 217 Ill. 2d 123, 132 (2005). These omissions are particularly problematic here because their inclusion would have assisted in resolving the morass of procedural glitches which we address below. The brief is so deficient that whether to dismiss the appeal is a fairly close call. Nonetheless, we will consider the merits of this appeal based on the brief presented, finding that defendant's lack of compliance with Supreme Court Rule 341(h) does not preclude our review. See *In re Estate of Jackson*, 354 Ill. App. 3d 616, 620 (2004) (reviewing court has choice to review merits, even in light of multiple Rule 341 mistakes).

¶ 15   We first address the propriety of the orders granting Plaza Bank's motion for summary judgment, the corollary order of foreclosure and sale, and the order denying reconsideration of those orders. Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). Summary judgment is a drastic measure and should only be granted when the moving party's right to judgment is "clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). "Where a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied." *Id.* "However, summary judgment requires the responding party to come forward with the evidence that it has–it is the put up or shut up moment in a lawsuit." (Internal quotation marks omitted.) *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 14. We review a trial court's entry of summary judgment *de novo*. *Outboard Marine Corp.*, 154 Ill. 2d at 102.

¶ 16   Plaza Bank's motion for summary judgment was straightforward and unremarkable. It set forth the various facts regarding the loans in question. It also included copies of the loan-related documents and an affidavit from a bank representative stating that he had reviewed the applicable records, determined that the loans were in default, and that over $1,200,000 was now due and owing on them. In response, the defendants did not dispute that the loan was overdue. In fact, their answer admitted the loans were in default.[2] Instead, they

---

[2]In their answer, the defendants committed a surprisingly common error by claiming lack of knowledge of an allegation, but then not including any affidavit in which they swore that they truly lacked such knowledge. They did so regarding the existence of the default and the delinquent payments,

relied on an affidavit purporting to establish two defenses to the summary judgment motion. They also relied on the numerous factual denials in their answer, but doing so is unavailing, because denials in a defendant's answer cannot be used to create a material issue of genuine fact to prevent summary judgment. *Korzen*, 2013 IL App (1st) 130380, ¶ 49.

¶ 17    The defendants' response includes an affidavit from Steven Otis, a consultant for Tsevis with experience in the banking business. He stated that he examined the relevant mortgages, notes, and other records pertaining to the loans. With only the thinnest of explanation, he offered the legal conclusion "predicated on his education and experience," that "there is no promissory note supporting the mortgage and the mortgage is a nullity without force and effect." While the affidavit is hardly a model of clarity on this point, it appears that Otis's conclusion stems from the fact that the September 25, 2009 note for $280,000 was executed by 17011, but the corresponding mortgage named Chicago Title and Trust as the mortgagor. Otis's conclusion that the mortgage is a "nullity" is unsupported by any authority. A review of the two documents in question reveals that the two documents were drafted together and intended to complement each other. The 2009 note indicates that it is secured by a junior mortgage on the Peterson Avenue property "of even date." The mortgage, also dated September 25, 2009, in turn, states that it secures a $280,000 note bearing the same date. Plaza Bank argues the difference is a scrivener's error, which it might be, but it is not uncommon for notes and the corresponding mortgages securing them to be executed by different parties. Examples include inclusion of nonowning spouses to waive homestead rights, and, as here, where the property is held in a land trust but the individual holding equitable title signs the note personally. Nothing in the authorities cited by Tsevis undermines the validity of the loan and mortgage at issue here.

¶ 18    The Otis affidavit also refers to section 15-1602 of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1602 (West 2010)), which creates a one-time right for mortgagors to rescue themselves from foreclosure by "reinstating" a defaulted loan. "Reinstatement is effected by curing all defaults then existing *** and by paying all costs and expenses required by the mortgage to be paid in the event of such defaults ***." *Id*. Reinstatement must be made "prior to the expiration of 90 days from the date" all the mortgagors have been served or subjected themselves to the jurisdiction of the court. *Id*. Here, the case was filed on June 2, 2011, the last mortgagor had been served on June 10, 2011, and the Tsevis defendants appeared in court on June 30, 2011 when the court first heard Plaza Bank's motion to appoint a receiver.

¶ 19    Otis stated that he went to Plaza Bank on "an unknown day of May 2011" as Tsevis's agent and "offered to cure any and all defaults of the mortgages, which are the subject matter of the above-entitled cause, and have the mortgage reinstated." He further states that he "made an offer to the agents of Plaza Bank *** to cure all defaults, pay all costs to reinstate the mortgage and have the mortgage effectively reinstated." He claimed that bank representatives refused the reinstatement even though Tsevis "had the funds necessary to fully pay *** and was ready, willing, and able to pay [*sic*] mortgage." Otis's affidavit: (1) does not set forth that there was any attempted tender, or placement of any check or cash before the Plaza Bank representatives, but merely an "offer"; (2) does not state the amount of the alleged tender or why that amount would have been sufficient under the reinstatement statute; and (3) provides no specific dates

---

and so admitted those allegations were true. *Hoxha v. LaSalle National Bank*, 365 Ill. App. 3d 80, 85 (2006); see also 735 ILCS 5/1-109, 2-610 (West 2010).

to demonstrate that the reinstatement was timely–either regarding service or the meeting at the bank. Nonetheless, Otis concluded "as an expert" that Tsevis validly reinstated the mortgage.

¶ 20    We agree with Plaza Bank that the above-mentioned three deficiencies in the Otis affidavit rendered it useless to demonstrate that Tsevis validly reinstated the mortgage. "[P]ayment of the required sums is the crucial act" to effectuate a valid reinstatement. *State Farm Life Insurance Co. v. Town & Country Associates*, 85 Ill. App. 3d 319, 322 (1980). Accordingly, there was no genuine issue of material fact preventing the granting of summary judgment in favor Plaza Bank.

¶ 21    The defendants moved to "vacate" for reconsideration of the summary judgment order, but the motion argued the merits of the summary judgment order and was more properly classified as a motion to reconsider. A trial court's decision to grant or deny a motion to reconsider lies within its sound discretion, and this court will not disturb such a ruling unless there has been an abuse of discretion. *Simmons v. Reichardt*, 406 Ill. App. 3d 317, 324 (2010). Because the motion to reconsider relied on the same faulty premises as the original response, the trial court could not have abused its discretion in denying the motion to reconsider.

¶ 22    For these reasons, we find that there was no material issue of genuine fact preventing summary judgment and we affirm the decisions: (1) granting Plaza Bank's motion for summary judgment; (2) foreclosing the mortgage and authorizing the sale of the property; and (3) denying reconsideration. The court below awarded Plaza Bank its attorney fees because the underlying agreements require the defendants to pay the attorney fees of Plaza Bank for any litigation it might bring to collect on the notes. We therefore remand the case to the trial court for the sole purpose of considering any supplemental fee petition which Plaza Bank might bring regarding this appeal.

¶ 23    We now review Tsevis's contentions regarding the dismissal of his counterclaim. Count II of the amended counterclaim contains 55 paragraphs and extends for 10 pages. Briefly, it alleges that Tsevis is an immigrant with limited knowledge of the English language who reposed great trust in particular Plaza Bank employees and that he was not competent to conduct many of his affairs due to illness. Plaza Bank notes, for the sake of argument, that these allegations are refuted by the fact that Tsevis was able to run the gas station in South Holland for many years during the applicable time period.

¶ 24    Before considering the merits of this portion of the appeal, we note that we have an independent duty to consider our own jurisdiction, whether or not the parties have raised it. *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009). When jurisdiction is lacking, the court must dismiss the appeal on its own motion. *Uesco Industries, Inc. v. Poolman of Wisconsin, Inc.*, 2013 IL App (1st) 112566, ¶ 73. We have no jurisdiction to review judgments, orders or decrees which are not final unless the supreme court rules give us that authority. *EMC Mortgage Corp.*, 2012 IL 113419, ¶ 9. The filing of a notice of appeal from an order or judgment which the supreme court rules do not make appealable neither deprives the trial court of jurisdiction to proceed with the case nor vests the appellate court with jurisdiction to consider it. *King City Federal Savings & Loan Ass'n v. Ison*, 80 Ill. App. 3d 900, 902 (1980).

¶ 25    Foreclosure cases proceed differently than other civil proceedings. Foreclosure cases involve a bifurcated procedure in which the trial court first must enter a judgment of foreclosure and sale. Significantly, that order does not terminate the case and is not appealable unless the court has specifically made a specific finding under Rule 304(a). Generally, notices

of appeal following orders of judgment of foreclosure and sale are premature because judges almost never allow plaintiffs to add Rule 304(a) language to standard foreclosure orders. The second part of the bifurcated procedure, an order confirming the sale and distributing the sale proceeds, usually closes the case and terminates the foreclosure proceedings. Thus, the order confirming the sale is the appealable order. *In re Marriage of Verdung*, 126 Ill. 2d 542, 555 (1989).

¶ 26 Rule 304(a) provides that if multiple parties or claims for relief are involved in an action, a party may appeal as a final judgment as to one or more but fewer than all the claims only if the trial court has made an express written finding that there is no just reason to delay enforcement or appeal of its order. Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010). Our supreme court has held that a claim includes any right, liability, or matter raised in an action. *Marsh v. Evangelical Covenant Church of Hinsdale*, 138 Ill. 2d 458, 465 (1990). If an order does not resolve every right, liability, or matter raised, it must contain an express finding that there is no just reason for delaying an appeal. *Id*. The purpose of Rule 304(a) is to discourage piecemeal appeals in the absence of a just reason and to remove the uncertainty which exists when a final judgment is entered on fewer than all the matters in controversy. *Id*. When a trial court dismisses a counterclaim without including Rule 304(a) language, we have no jurisdiction to review that finding. See *Eychaner v. Gross*, 321 Ill. App. 3d 759, 783 (2001) (order dismissing counterclaims did not include Rule 304(a) language and, thus, the reviewing court found it had no jurisdiction over those claims), *rev'd on other grounds*, 202 Ill. 2d 228 (2002).

¶ 27 As noted above, an order of foreclosure and sale cannot be interlocutorily appealed unless it contains the required Rule 304(a) language. The foreclosure order contained that language, but the separate counterclaim order did not. When Tsevis appealed both orders, the foreclosure case was still pending, so any interlocutory order that did not contain Rule 304(a) language, such as the counterclaim dismissal, was not yet appealable. His appeal was viable only as to the foreclosure order. In the absence of a Rule 304(a) finding on the dismissal of Tsevis's counterclaim, we find an appeal from such a dismissal order is barred by lack of jurisdiction.

¶ 28 There are some exceptions that allow review of orders that are corollary to appealable interlocutory orders, but they do not apply here. First, the counterclaim dismissal was not an underlying order which formed part of the "procedural progression" of the appealable foreclosure order. *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 436 (1979). See also *People v. Johnson*, 208 Ill. 2d 118, 145 (2003) (Kilbride, J., concurring in part and dissenting in part) (reaffirming the rule in *Burtell* and stating that it applies "even more forcefully *** to interlocutory appeals since, by definition, they have a limited scope of review"). Indeed, the counterclaim dismissal order could not have been part of the natural progression to the foreclosure order because the two orders resolved claims brought by opposing parties. Second, the trial court never severed the counterclaim from the main foreclosure case so as to create two separate, independent cases. *Carter v. Chicago & Illinois Midland Ry. Co.*, 119 Ill. 2d 296, 308 (1988) (holding that severance might make orders in the severed claim appealable). Tsevis's notice of appeal cites *Santana v. Zipperstein*, 142 Ill. App. 3d 386 (1986), but we cannot discern how that case supports his belief that the counterclaim dismissal was appealable. In fact, *Santana* reaffirms the general proposition that foreclosure orders are not immediately appealable because the sale of the subject property and distribution of the sale proceeds necessarily remain pending. *Id.* at 388-89.

¶ 29    As we noted above, adding Rule 304(a) language to foreclosure orders is relatively rare. The Rule 304(a) language in the foreclosure order requires us to digress and address one additional point unique to cases like this, lest our silence be construed as approval. Lenders desire it because it locks in their judgment and makes it bulletproof against attempts by a borrower to appeal it after 30 days have passed. However, lenders using the language take the risk that if a borrower immediately appeals the order, the judge might stay proceedings regarding the sale and distribution of sale proceeds until the appeal is resolved. Borrowers, particularly ones who have not been active in the case and have been defaulted, benefit when a foreclosure order is not made appealable because doing so keeps the door open for them to seek modification of the foreclosure order until the motion to confirm sale is filed. *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 27. It seems that judges hearing foreclosure cases have cast their lot with the borrowers, recognizing that many borrowers fail to take action until later in the process. No party has raised the issue of whether the trial court could proceed to conduct and confirm the sale of the property while the foreclosure order allowing the sale was being interlocutorily appealed. This might be problematic because the validity of the sale arguably depends on the validity of the foreclosure order. See *Cygnar v. Martin-Trigona*, 26 Ill. App. 3d 291, 293 (1975) (once the jurisdiction of the appellate court attaches by reason of the filing of a notice of appeal, the trial court is without jurisdiction to take any further action insofar as the notice of appeal affects the subject that the trial court might seek to act upon). But we can consider only questions existing when Tsevis filed his notice of appeal. *Id*. Therefore, we have no jurisdiction to consider the validity of the subsequent proceedings, including the property sale and distribution of the sale proceeds. Noting only that the point has probably been forfeited at this juncture by Tsevis's failure to appeal the sale order, we express no opinion herein on whether such simultaneous proceedings are generally valid.

¶ 30                                    CONCLUSION

¶ 31    For these reasons, we affirm the order of foreclosure and sale, but dismiss the appeal as to the breach of fiduciary duty count in the counterclaim. We remand for consideration of additional attorney fees owed to Plaza Bank.

¶ 32    Affirmed in part and dismissed in part. Cause remanded.