2020 IL App (1st) 191280-U

No. 1-19-1280

Order filed March 3, 2020

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| TRACEY J. ELLIS, | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner-Appellant, | ) | Decision of the Illinois Human |
| | ) | Rights Commission. |
| v. | ) | |
| | ) | |
| THE HUMAN RIGHTS COMMISSION, THE | ) | No. 2017 CP 1619 |
| DEPARTMENT OF HUMAN RIGHTS, and | ) | |
| EVANSTON PUBLIC LIBRARY, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Pucinski and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The Human Rights Commission did not abuse its discretion by sustaining the dismissal of petitioner's charge of public accommodation discrimination for lack of substantial evidence.

¶ 2    Petitioner Tracey Ellis appeals *pro se* from a final order entered by the Illinois Human Rights Commission (Commission) sustaining the Illinois Department of Human Rights' (Department) dismissal of her charge of public accommodation discrimination against

respondent Evanston Public Library (the Library). Petitioner alleged that the Library denied her full and equal enjoyment of a place of public accommodation based on her race and the color of her skin in violation of section 5-102(A) of the Illinois Human Rights Act (Act) (775 ILCS 5/5-102(A) (West 2016)). The Department dismissed her charge for lack of substantial evidence. Petitioner appealed to the Commission and it sustained the Department's decision. Petitioner now contends the Commission abused its discretion in sustaining that dismissal. We affirm.

¶ 3    On January 19, 2017, petitioner filed a public accommodation discrimination charge with the Department alleging that the Library denied her the full and equal enjoyment of its facilities and services because of her race, which she described as "black" (count A), and her skin color, which she described as "light" (count B). Petitioner alleged that on January 12, 2017, she made a "business call" on her cell phone while using the computers at the Library. A black, dark-skinned, male security guard at the Library then told her to leave. Petitioner refused to leave "and the police were called," after which the Library banned petitioner from coming into its premises for 30 days. Petitioner alleged she witnessed similarly situated non-black and dark-skinned patrons use their phones in the library without being banned.

¶ 4    Petitioner's charge was investigated by the Department. Before preparing its report, the investigator for the Department interviewed petitioner, Kathleen Lanigan, the librarian at the Library on the date of the incident, and Stan Azeem, the security guard who spoke with petitioner. Petitioner stated that she had visited the Library prior to January 12, 2017, and had used her cell phone in the computer area without any issue. On January 12, 2017, as petitioner was using the computer in the computer lab, she saw no signs posted prohibiting cell phone use and witnessed other patrons using their phones. She used her cell phone, at which point a

librarian approached her and told her "[y]ou're not supposed to be on the phone." Petitioner then hung up the phone and told the librarian "she never had a problem before." Petitioner continued to work on the computer when a security guard approached her and told her to use her phone near the bathroom area. Petitioner believed the librarian had told the security guard she could not be in the Library. Petitioner stated she told the guard there were no signs posted about cell phone use in the Library, but he told her that he would call the police. The police arrived and told petitioner she had to leave the Library and could not return for 30 days, at which point she left. Petitioner saw no other person be told "to move or leave."

¶ 5    The Library provided its "Rules for Use of Library" (Rules) and "Suspension of Library Privileges" policy (Policy). The Library's Rules prohibit behavior including "talking loudly," "making excessive noise," and "us[ing] cell phones so as to disturb other people's use of the Library." Under the Rules, Library staff members are responsible for enforcing the rules, and "the police will be called" when Library patrons "willfully and persistently violate" the rules or engage in criminal acts. Under the Policy, the Library board has the authority to exclude from use of the premises any person "who willfully violates the rules prescribed by the board." The length of such a suspension will be determined by the Library Director or other designated staff.

¶ 6    Lanigan told the investigator library patrons are allowed to use their cell phones in the Library "as long as they keep their voices down and do not disturb the people around them." If a person is being too loud on the cell phone, he or she will be asked to go to a different area of the Library. On January 12, 2017, Lanigan was sitting at the reference desk and heard petitioner "yelling" into a cell phone. She approached petitioner and requested she "be quiet," but

petitioner continued to speak loudly on the phone. Lanigan called security in case petitioner continued to be disruptive, and Azeem arrived and approached petitioner to speak with her.

¶ 7     Azeem told the investigator he told petitioner she could use her cell phone by the elevator or downstairs because she was speaking too loudly. As Azeem walked away, petitioner began yelling, so Azeem asked her to leave the Library for the day. Petitioner refused to leave, so "the police department was called," and Azeem told the police that petitioner was banned from the Library for 30 days pursuant to the Library's policies. The police escorted petitioner from the Library and told her she was suspended. Azeem stated that other people have been suspended from the Library for 30 days for being too loud on the phone or violating Library policies.

¶ 8     The Library presented a memorandum from Library security to Carrie W., a white woman, dated December 24, 2014, which stated that she was talking on the phone loudly and swearing in the presence of children, so the Library called the Evanston police and suspended her from the Library for "one month."[1]

¶ 9     In rebuttal, petitioner denied talking loudly and stated she was "using a normal tone of voice." She stated no other people were asked to move or leave, and the security guard did not tell her to leave for a day, only that he would call the police. Petitioner reaffirmed she had never had problems using her phone at the Library previously.

¶ 10    The investigator found no evidence that petitioner was denied the full and equal enjoyment of the Library's facilities due to her race or skin color. The investigation revealed that, while petitioner was using the computer lab in the Library, she was speaking loudly on her

---

[1] For privacy reasons, we do not use Carrie W.'s full name. The Department sets forth the content of the memorandum but does not explain how it knew Carrie W. was white. The memorandum is not included in the record on appeal.

cell phone in violation of the Library Rules. She failed to comply with the Library staff's requests to speak more quietly or move to a different area of the Library, and "continued to be loud and disruptive on the phone." Due to this non-compliance, the police were called and petitioner was suspended for 30 days. The evidence showed the Library had suspended other patrons of different races for a period of 30 days for being disruptive and not complying with staff's requests. The investigator recommended a finding of lack of substantial evidence as to both counts of petitioner's charge, noting petitioner used the Library's facilities multiple times in the past, which indicated the Library never intended to deny her its services due to her race or color, and there was no evidence the Library held a race or color-based animus against her. The investigator also noted the lack of evidence that any non-black or non-light skinned individual was treated more favorably under similar circumstances. The Department subsequently dismissed petitioner's charge.

¶ 11     Petitioner filed a request for review of the Department's decision with the Commission, arguing she was wrongfully suspended from the Library "based on her American English Privileged half white skin color, and race, Black." Petitioner claimed that, prior to January 12, 2017, she asked the previous librarian, "a very respectful white American male," about her cell phone use and he told her it was "not a problem." Petitioner stated she was "the only lite [*sic*] skinned American English female that was treated differently from the black Dark patrons, and foreign, [illegible], Polish or African patrons." She claimed other patrons of "dark" or "foreign" descent were using their cell phones in the Library but were not told to leave or suspended. Petitioner argued Lanigan and Azeem were both "jealous and resentful to see that [petitioner's] face is the upper American English half one, of more privileged U.S. status, and with an ethical

background, (i.e.) doing constructive activities in a library of her choice, and that they were jealous to see her performing." Petitioner concluded the witnesses for the Library were "liars" and "took advantage of [petitioner] being a responsible upper American independent pretty half white national beauty and, posed an intellectual threat to [them]."

¶ 12　The Department responded that its investigation showed the Library's articulated non-discriminatory reason for its actions against petitioner was that petitioner was "loud and disruptive" while using her cell phone in the Library's facility and she refused to comply with the Library staff's request that she move to another area to use her phone. The Department found the Library admitted knowing petitioner's race and skin color but denied that either was a factor in making its decision to suspend her privileges. The Library had previously suspended a white patron for speaking loudly on the phone. The Department found no substantial evidence that the Library denied petitioner the full and equal enjoyment of its facilities based on her race and skin color, and its legitimate non-discriminatory reason for her suspension was not pretext for unlawful discrimination. The Department argued no evidence was presented regarding any animus based on petitioner's race or skin color, or a nexus between her 30-day ban from the Library's facilities and her race or skin color.

¶ 13　Petitioner filed a reply arguing she was "the only American English black female of lighter color to be denied access to the Evanston Public Library for 30 days" and the other individuals who were banned were "non-American white Polish or an African dark American." She reaffirmed Lanigan and Azeem were motivated by "jealousy" based upon her race and color and attempted to make her "appear irresponsible."

¶ 14    On June 12, 2019, the Commission issued its final administrative decision, sustaining the Department's dismissal of the charge for lack of substantial evidence. It found that petitioner failed to establish that the Library treated other patrons more favorably under similar circumstances and she, in fact, acknowledged that "both black and white patrons were permitted to remain on their cell phones." The Commission found the Library posted Rules against talking loudly or making excessive noise, permitted cell phone use if patrons spoke in low voices, and would ask a patron to move if he or she was too loud. Petitioner failed to establish "comparators" to raise any inference that the Library was motivated by petitioner's race or skin color in its actions. It concluded petitioner did not present enough evidence to show that the Department's dismissal of the charge was not in accordance with the Act.

¶ 15    On June 25, 2019, petitioner filed her petition for direct review of the Commission's decision in this court. Petitioner argues she established a *prima facie* case of race and color discrimination. She contends the Commission overlooked "direct evidence" of the Library's violation of her public accommodation rights. She further argues the Library never attached any memorandum or affidavit of service to their "position statement, nor initial response to [petitioner's] charge" and no "memo or affidavit" was ever served upon Carrie W., "which was a falsely made up name to add to the list."

¶ 16    As an initial matter, we note petitioner's appellate brief does not comply with Illinois Supreme Court Rule 341(h) (eff. May 25, 2018), which governs the content of appellate briefs. For example, petitioner's brief does not contain any "Points and Authorities" statement, outlining the points argued and authorities cited in the Argument (see Rule 341(h)(1)), no statement of jurisdiction (see Rule 341 (h)(4)), and no argument supported by citations to the record or to

legal authority (see Rule 341(h)(7)). We may strike a brief and dismiss the appeal for failure to comply with the rules. *Marzano v. Dept. of Emp't. Sec.*, 339 Ill. App. 3d 858, 861 (2003). Regardless, we have the benefit of a cogent brief from respondents the Commission and Department and so choose to reach the merits of the appeal. See *North Community Bank v. 17011 South Park Ave., LLC*, 2015 IL App (1st) 133672, ¶ 14 (reviewing merits of the appeal despite appellant's numerous violations of Supreme Court Rule 341(h)).

¶ 17    Under the Act, it is "a civil rights violation for any person on the basis of unlawful discrimination to * * * [d]eny or refuse to another the full and equal enjoyment of the facilities, goods, and services of any public place of accommodation." 775 ILCS 5/5-102(A)(West 2016). "Unlawful discrimination" is defined in part as discrimination against a person because of her race or color. 775 ILCS 5/1-103(Q) (West 2016).

¶ 18    Where a petitioner brings a charge under the Illinois Human Rights Act (Act), the Department shall conduct an investigation to determine whether the allegations are supported by substantial evidence. 775 ILCS 5/7A-102(C)(1) (West 2016). "Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." 775 ILCS 5/7A-102(D)(2) (West 2016). If the Department determines there is no substantial evidence supporting the charge, it shall dismiss the charge. 775 ILCS 5/7A-102(D)(3) (West 2016). The petitioner may then either commence a civil action in a circuit court or, as petitioner did here, file a request for review of the dismissal with the Commission. 775 ILCS 5/7A-102(D)(3) (West 2016).

¶ 19   A final order of the Commission may be judicially reviewed by the Appellate Court under the abuse of discretion standard of review. 775 ILCS 5/8-111(B)(1) (West 2016); *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 32. Under this standard, the court should not disturb the Commission's decision unless it is arbitrary or capricious. *Young*, 2012 IL App (1st) 112204, ¶ 33. A decision is arbitrary or capricious if it contravenes the legislature's intent, fails to consider a crucial aspect of the problem, or offers an impossible explanation contrary to agency expertise. *Owens v. Dep't. of Human Rights*, 403 Ill. App. 3d 899, 917 (2010).

¶ 20   We review the final order of the Commission, not the Department decision. *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 180 (1989). The Commission's findings of fact "shall be sustained unless the court determines that such findings are contrary to the manifest weight of the evidence. 775 ILCS 5/8-11(B)(2) (West 2016). A reviewing court may not reweigh the evidence or substitute its judgment for that of the Commission, and abuse of discretion will be found where no reasonable person could agree with the position of the lower court. *Young*, 2012 IL App (1st) 112204, ¶ 33.

¶ 21   In analyzing claims of public accommodation discrimination under the Illinois Human Rights Act, we are guided by federal case law relating to analogous federal anti-discrimination statutes, here Title II of the Civil Rights Act of 1964, which in relevant part protects an individual's "full and equal enjoyment" of services and facilities of any place of public accommodation without discrimination on the ground of race or color (42 U.S.C. § 2000a (2000)). See *Zaderaka*, 131 Ill. 2d at 178 (analyzing an employment discrimination action using federal case law addressing claims under Title VII of the Civil Rights Act of 1964).

¶ 22 Because petitioner has provided no direct evidence of discrimination, we must analyze petitioner's claim using the three-part test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Zaderaka*, 131 Ill. 2d at 178-79; *Young*, 2012 IL App (1st) 112204, ¶ 34. Under this test, first the petitioner has the burden to show a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Young*, 2012 IL App (1st) 112204, ¶ 34. If the petitioner establishes a *prima facie* case of discrimination, a rebuttable presumption of unlawful discrimination arises. *Id.*, ¶ 36. In order to rebut the presumption, the respondent must articulate a legitimate, nondiscriminatory reason for its decision. *Id.* If the respondent does so, the burden shifts back to the petitioner to prove the respondent's reason was a pretext for unlawful discrimination. *Id.* The ultimate burden remains with petitioner at all times. *Zaderaka*, 131 Ill. 2d at 179.

¶ 23 To establish a *prima facie* case for public accommodation discrimination, petitioner must show she: (1) is a member of a protected class; (2) attempted to exercise her right to full benefits and enjoyment of respondent's facilities; (3) was denied those benefits and enjoyment; and (4) was treated less favorably than similarly situated persons outside her protected class. *McCoy v. Homestead Studio Hotels*, 390 F. Supp. 2d 577, 583-85 (S.D. Tex. 2005).

¶ 24 We find the Commission did not abuse its discretion in finding petitioner failed to establish a *prima facie* case of public accommodation discrimination based on her race or skin color. The parties here do not dispute that the Library is a public place of accommodation under the Act, that petitioner was a member of a protected class with respect to her race or skin color, or that she was asked to leave the Library and suspended from its premises for 30 days. However, petitioner failed to present any evidence that similarly situated patrons not in her

protected class were permitted to use their cell phones in a loud and disruptive manner without being asked to relocate or leave, or were not suspended for failure to comply with the Library staff's requests.

¶ 25    The evidence showed petitioner had used her cell phone in the Library on prior occasions without incident, and that she was asked to leave only when she refused to comply with requests to speak quietly or to make her phone call elsewhere, as required by Library rules. While petitioner stated other patrons of different races and skin colors were not asked to leave after speaking on their phones, she provided no evidence that these individuals were being loud and disruptive, as petitioner was when she was asked to leave. Moreover, the Library provided evidence that another patron, Carrie W., a white woman, was similarly asked to leave and suspended from the premises for "a month" due to loud and disruptive behavior similar to petitioner.[2] Accordingly, petitioner did not meet her burden to prove she was treated less favorably than similarly situated persons outside her protected class. See *McCoy*, 390 F. Supp. 2d at 584-85.

¶ 26    Regardless, even if petitioner had established a *prima facie* case for public accommodation discrimination, the Library has articulated a legitimate, nondiscriminatory reason for its actions in suspending petitioner due to her cell phone usage. The Library's Rules and Policy prohibit patrons from certain conduct, including talking too loudly or using a cell phone in a manner disruptive to other patrons. Library staff are required to enforce these

---

[2] For the first time on appeal, petitioner claims that Carrie W. was a falsely made up name, asserting the Library "lied" about her suspension. In her appeal, petitioner also raises procedural claims regarding the Library's failure to attach certain affidavits and other documents. Petitioner did not raise these claims to the Department or Commission. We will not consider any issues on appeal not raised initially during the administrative proceeding. *Illinois Bell Telephone Co. v. Human Rights Comm'n*, 190 Ill App. 3d 1036, 1044-45 (1989).

prohibitions and call the police if necessary. Further, under the Policy, the Library staff may suspend Library privileges for willful and persistent violations of the Rules. Accordingly, it was reasonable for Library staff to ask petitioner to leave for disturbing the other patrons and suspend her when she refused to comply with their requests. The Library suspended petitioner due to her behavior, not her race or color.

¶ 27    Lastly, petitioner failed to establish that the Library's stated reasons were only a pretext for unlawful discrimination. Petitioner provides no evidence, other than her own speculation, that any Library staff member had animus toward her due to her race or skin color. "A petitioner's discrimination charge consisting of mere speculation and conjecture does not constitute substantial evidence." *Folbert v. Dep't of Human Rights*, 303 Ill. App. 3d 13, 25 (1999). Accordingly, petitioner has failed to establish that her removal and 30-day suspension from the Library on January 12, 2017, was due to any discriminatory reason.

¶ 28    For the foregoing reasons, the Commission's June 12, 2019 order sustaining the Department's dismissal of petitioner's charge for lack of substantial evidence is affirmed.

¶ 29    Affirmed.