2021 IL App (1st) 200562-U

No. 1-20-0562

Order filed July 30, 2021

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| DEVIN WORDLAW, SR., | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner-Appellant, | ) | Decision of the Illinois Human |
| | ) | Rights Commission. |
| v. | ) | |
| | ) | Charge No. 2014 CA 3217 |
| MARS CHOCOLATE NORTH AMERICA, LLC, THE | ) | |
| ILLINOIS DEPARTMENT OF HUMAN RIGHTS. and | ) | |
| THE ILLINOIS HUMAN RIGHTS COMMISSION, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Hoffman and Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held:*  We affirm the order of the Illinois Human Rights Commission dismissing a charge of discrimination because the Commission did not abuse its discretion in determining that the charge  was not supported by substantial evidence.

¶ 2    Petitioner Devin Wordlaw, Sr. seeks review of an order of the Illinois Human Rights

Commission (Commission) sustaining the dismissal by the Illinois Department of Human Rights

(Department) of his employment discrimination charge against Mars Chocolate North America, LLC (Mars) pursuant to the Illinois Human Rights Act (Act) (775 ILCS 5/1-101, *et seq.* (West 2014)). For the following reasons, we affirm the Commission's decision.

¶ 3                                          FACTS

¶ 4     On June 12, 2014, petitioner filed a *pro se* charge of discrimination with the Department alleging that Mars discriminated against him on the bases of his age (45) and race (Black) when it suspended and subsequently discharged him in March 2014 for an alleged safety violation. Petitioner further alleged that his job performance met Mars's expectations and similarly situated younger and non-Black employees were not treated in the same manner under similar circumstances.

¶ 5     The Department assigned an investigator to petitioner's charge, who interviewed petitioner and Mars employees. According to the investigator's report, it was uncontested that Mars had a "Lock Out/Tag Out" (LOTO) policy requiring employees to lock out machines. Violations of the LOTO policy could result in discipline up to and including termination. Petitioner was hired as a Team Member on April 9, 2001. Employment data established that in 2013, 23% of Mars's employees were Black.

¶ 6     In January or February 2014, Kim Latham began working as a Site Director. On March 14, 2014, Latham and "MRF Manager" Michael Martinez observed petitioner service a stretch wrap machine without locking it out. Petitioner stated that on March 14, 2014, he and Chris Garcia were at the stretch wrap machine and petitioner was changing the stretch wrap roll. Latham and Martinez asked him why he did not lock down the machine, and petitioner told them that under the "work instructions" for changing the stretch wrap, the machine did not need to be locked down. He stated that if the machine's door is open, it is disconnected and cannot start, and that it is "impossible" to

close the door when changing the shrink wrap. Martinez suspended petitioner with pay, pending an investigation. People & Organizations Manager Linda Lazlo discharged petitioner, stating that Mars had zero tolerance for LOTO policy violations.

¶ 7     According to petitioner, all team members have changed the stretch wrap without locking down the machine. Specifically, in November 2013, Dana Mitchell changed the stretch wrap without locking down the machine and was not disciplined. However, petitioner did not know if Mars was aware of this incident. In December 2013, Vince Abbadessa lowered the stretch wrap ring without locking down the machine, and a retired manager told him to lock it. Abbadessa was not disciplined.

¶ 8     Garcia stated he worked for a private contractor at Mars. No one from Mars talked to him about the incident at issue. For the year that Garcia worked at Mars, he never saw anyone lock or tag out any machine. Although there was a LOTO policy, it was not enforced and there were no consequences for violations. Latham began to enforce the policy when she started working at Mars. Garcia recalled only one LOTO sign on a different machine before this incident, but later, signs were posted.

¶ 9     Mars's evidence established that the Team Member role description states they are accountable for operating equipment in a safe manner. The LOTO policy provides that all violations must be investigated and handled as serious in nature. In October 2001, petitioner signed a document stating that every LOTO policy breach would be fully investigated and could result in discipline up to and including termination. The stretch wrap machine's door had a sign instructing employees to lock out before entry.

¶ 10     Emails between Latham, Lazlo, Martinez, and Shift Lead Ruben Chacon stated that when Chacon met with petitioner after the incident, petitioner reported that everyone did it the way that

he did. Chacon responded that petitioner was the one who got caught. When petitioner was showed how to lock out the machine and told the importance of the LOTO policy, petitioner appeared disinterested and became angry and upset.

¶ 11    Martinez stated that after witnessing petitioner fail to lock out the machine, he consulted with Chacon, Safety Tech Cary Hendrix, and Outbound Coordinator St. Clair Haywood, and they all agreed the machine should have been locked down.  Martinez then determined it was necessary to suspend petitioner. Martinez consulted with Mars's national headquarters to see what they have done in the past with LOTO policy violations and determined that petitioner would be discharged. Although Martinez thought the machine's work instructions should have said it needed to be locked out, there were "visible instructions" requiring it be locked out. Martinez added that the LOTO policy is "OSHA standards." Martinez was not aware of anyone else violating the LOTO policy, and other employees denied petitioner's allegation that no one followed it.

¶ 12    The investigator's report further noted that Team Member Jason Spera was discharged in November 2013 for a LOTO policy violation. Team Member David Strang was suspended in October 2011 for a safety violation resulting in damage to company property and was discharged in May 2013 for various "railcar accidents." Team Member Terrence Booker received a written warning in April 2013 for a safety violation involving failing to immediately report an injury. Team Member Bryan Kruizenga received a written warning in May 2013 for unacceptable job performance. All four individuals, except for Booker, were non-Black. Petitioner's replacement, Fred Miller, was hired in May 2014.

¶ 13    The Department's investigator recommended that all counts of petitioner's charge be dismissed for lack of substantial evidence. The investigator noted that it was uncontested that petitioner did not lock out the stretch wrap machine, which violated Mars's LOTO policy.

Regarding petitioner's offered comparatives, the investigator found that Mitchell was in both of petitioner's protected categories, while Abbadessa was in one of the protected categories (age), but his alleged violation occurred under a different manager, and it was not shown he violated any safety policies. Further, there was no evidence that management was aware that Garcia was in the stretch wrap machine with petitioner. Additionally, Mars disciplined younger and/or non-black employees for policy violations, including discharging a younger, non-Black employee, Spera, for an LOTO policy violation. Moreover, petitioner was replaced by a Black employee, Miller. The Department dismissed petitioner's charge for lack of substantial evidence.

¶ 14    Petitioner filed a request for review with the Commission. In his request, he alleged that several employees admitted they lied about following LOTO policy, that the stretch wrap machine was not discussed at annual LOTO training, and that work instructions for the stretch wrap machine, which he attached to the request for review, did not mention LOTO. Petitioner argued that Strang was treated more leniently because he was not discharged after his first safety violation. He alleged that Martinez and Chacon, both Hispanic, conspired to terminate him, and that Chacon violated work instructions regarding confined spaces, which he also attached to his request for review. He further alleged that Mars was quick to terminate employees eligible for the "old" pension plan.

¶ 15    The Department filed a response to petitioner's request for review recommending that the Commission sustain its dismissal of petitioner's charge. The Department noted that petitioner did not identify the individuals he claimed lied about following LOTO policy or submit evidence that Mars acted in bad faith. In response to his allegations that the machine at issue was not discussed at LOTO training and that the machine's work instructions do not mention LOTO policy, the Department pointed out that petitioner did not dispute that the machine had a sign indicating a

requirement to follow the LOTO policy. Regarding petitioner's allegation that Strang was treated more leniently, the Department pointed out that Mars terminated a non-Black team member, Spera, for a LOTO policy violation. The Department reasoned that petitioner's allegation that Martinez and Chacon conspired against him amounted to speculation and conjecture that did not constitute substantial evidence of unlawful discrimination. Petitioner also failed to submit evidence supporting his claim regarding termination of employees on the old pension plan.

¶ 16     On February 22, 2019, the Commission issued an order sustaining the Department's dismissal. The Commission found that petitioner had not established a *prima facie* case of age or race discrimination because he failed to perform his work satisfactorily when he ignored the LOTO policy and had not provided, nor had the investigation revealed, any evidence that Mars treated similarly situated, younger and/or non-black team members more favorably. Further, Mars articulated a nondiscriminatory reason for its actions, *i.e.*, the LOTO policy violation, and petitioner failed to offer evidence of pretext. On March 26, 2020, petitioner filed a petition for direct administrative review in this court. In his brief, the Attorney General advises that the Commission originally sent its decision to an incorrect address for Wordlaw. The postal service returned it as undeliverable. The Commission did not send it to the correct address until February 28, 2020, so this petition for review is timely. See 775 ILCS 5/8-111(B)(1) (West 2020) ("Any complainant or respondent may apply for and obtain judicial review of a final order of the Commission entered under this Act by filing a petition for review in the Appellate Court within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision.").

¶ 17                                                    ANALYSIS

¶ 18     In his *pro se* brief, petitioner maintains that the relevant work instructions did not require the stretch wrap machine to be locked out. He asserts that he presented evidence of two non-Black employees who violated LOTO policy and were allowed to return to work following three-day suspensions. He further asserts he has new evidence that in September 2016, four other non-Black employees violated LOTO policy and were allowed to return to work following three-day suspensions.

¶ 19     As a threshold matter, we address deficiencies in petitioner's brief. Compliance with Illinois Supreme Court Rule (Rule) 341(h) (eff. Oct. 1, 2020) is mandatory, even for *pro se* litigants. See *Voris v. Voris*, 2011 IL App (1st) 103814, ¶ 8 (compliance with rules governing briefs on appeal is compulsory regardless of a party's *pro se* status). If an appellant's brief fails to comply with the applicable rules of appellate procedure, we may strike that brief and dismiss the petition for review. *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 12.

¶ 20     Petitioner's brief does not comply with Rule 341(h) in several important respects. For example, his brief does not contain citations to any legal authority (see Rule 341(h)(1)); a viable statement of jurisdiction (see Rule 341(h)(4)), or citations to the record (see Rule 341(h)(7)). Nevertheless, it is clear from his brief that he challenges the Commission's final order, and we have the benefit of the respondents' cogent briefs. As the issues are evident and the merits of the appeal can be readily ascertained from the short record on appeal, we proceed to the merits of the appeal. See *North Community Bank v. 17011 South Park Ave., LLC*, 2015 IL App (1st) 133672, ¶ 14 (reviewing the merits of an appeal despite the appellant's violations of Rule 341(h)).

¶ 21     The Act provides that it is a violation "[f]or any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training

or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status." 775 ILCS 5/2-102(A) (West Supp. 2013). "Unlawful discrimination" includes discrimination against a person because of his age or race. 775 ILCS 5/1-103(Q) (West 2012).

¶ 22    A case under the Act is commenced by an aggrieved party filing a written charge  with the Department. 775 ILCS 5/7A-102(A)(1) (West 2012). The Department investigates a charge to determine whether there is substantial evidence of the alleged violation. 775 ILCS 5/7A-102(C)(4), (D)(2) (West 2012). "Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." 775 ILCS 5/7A-102(D)(2) (West 2012). If there is no substantial evidence of a violation, the Department dismisses the charge. 775 ILCS 5/7A-102(D)(3) (West 2012). The charging party may then commence an action in the circuit court or, as petitioner did here, file a request for review of the dismissal with the Commission. 775 ILCS 5/7A-102(D)(3) (West 2012). Judicial review of the Commission's final order is heard directly in this court. 775 ILCS 5/8-111(B)(1) (West 2020).

¶ 23    We review the Commission's final order sustaining the dismissal of a discrimination charge for lack of substantial evidence for abuse of discretion. *Young v. Illinois. Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶¶ 32-33. Under this standard, we reverse the Commission's decision only if it was arbitrary and capricious in that it contravenes legislative intent, fails to consider a crucial aspect of the matter, or offers an impossible explanation contrary to the Commission's expertise. *Id.*

¶ 24    A petitioner may prove discrimination by either presenting direct evidence that race was a determining factor in the employment decision or, as petitioner did here, by using the indirect

method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Lalvani v. Illinois Human Rights Comm'n*, 324 Ill. App. 3d 774, 790 (2001). Under this method, a petitioner must first make a *prima facie* case of unlawful discrimination by showing through a preponderance of the evidence that he (1) was a member of a protected class, (2) met his employer's legitimate business expectations, (3) suffered an adverse employment action, and (4) the employer treated others similarly situated outside his protected class more favorably. *Young*, 2012 IL App (1st) 112204, ¶ 34. A *prima facie* case creates a rebuttable presumption that the employer unlawfully discriminated against the petitioner. *Id.* ¶ 36. To rebut the presumption, the employer must articulate (not prove), a legitimate, nondiscriminatory reason for its actions. *Id.* The petitioner then has an opportunity to prove by a preponderance of the evidence that the articulated reason was untrue and merely pretext for unlawful discrimination. *Id.* The ultimate burden always remains on the petitioner. *Id.*

¶ 25    In this case, petitioner has failed to make a *prima facie* case of employment discrimination based on his age or race because he failed to meet the second or fourth prongs in the *McDonnell Douglas* test. Specifically, the Commission's finding that petitioner failed to show that he met his employer's legitimate business expectations was proper , because the uncontroverted evidence established he admittedly failed to lock out the stretch wrap machine while servicing it, which violated Mars's LOTO policy. Petitioner was aware of the LOTO policy and, in October 2001, had signed a document stating that every LOTO policy breach would be fully investigated and could result in discipline up to and including termination. Although petitioner contends that he was following work instructions that did not require locking out the machine, he does not deny that the machine had a sign on it noting the need to abide by the LOTO policy.

¶ 26    Additionally, the Commission's determination that petitioner did not establish that Mars treated similarly situated, younger and/or non-Black team members more favorably was consistent with the evidence. Contrary to petitioner's claims, the record shows that Mars disciplined younger and/or non-Black employees for policy violations, including discharging a younger, non-Black employee, Spera, for a LOTO policy violation. In its ruling, the Commission differentiated each of petitioner's offered comparative employees, and identified those who did not fall into protected classes and who were discharged for a LOTO policy violation. Petitioner's brief merely references unidentified employees who allegedly violated LOTO policy, without being terminated. Thus, petitioner's employment discrimination claim fails outright.

¶ 27    Moreover, even if petitioner were able to establish a *prima facie* case of employment discrimination, he failed to offer evidence that Mars's articulated nondiscriminatory reason for its actions was a pretext for age or race discrimination. Mars reported that it suspended petitioner after Latham and Martinez observed him servicing the stretch wrap machine without locking it out, as required by Mars's LOTO policy. This constituted a safety violation, which was punishable by discipline up to and including termination. As mentioned above, petitioner was aware of this policy and had signed off on it. Accordingly, the Commission did not abuse its discretion in sustaining the dismissal of his discrimination charge for lack of substantial evidence on this basis. Although petitioner claims Mars's expressed reason for his termination was pretextual, he failed to present any evidence in support of that assertion.

¶ 28                                    CONCLUSION

¶ 29    Therefore, we conclude that the Commission did not abuse its discretion in sustaining the Department's dismissal of the discrimination charge for lack of substantial evidence.

¶ 30    Affirmed.